United States District Court
Southern District of Texas

**ENTERED**

December 13, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| REGINA WRIGHT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-202 |
| | § | |
| IGLOO PRODUCTS CORP., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendant's Motion to Dismiss and Compel Arbitration (Doc. 25). The court has considered the motion, Plaintiff's replies and responses (Doc. 27, Doc. 28, Doc. 30, Doc. 45), Defendant's replies and responses (Doc. 31, Doc. 37), all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion to dismiss and compel arbitration be **GRANTED**.

## I.  Case Background

Plaintiff filed this action against Defendant under Title VII of the Civil Rights Act of 1964 ("Title VII"), alleging that Defendant discriminated against Plaintiff based on her race, sex, and color, and that Defendant retaliated against and terminated Plaintiff for reporting harassment.[2] Plaintiff also brings claims

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 14, Ord. Dated June 1, 2016.

[2] See Doc. 1, Pl.'s Compl.; Doc. 38, Pl.'s Am. Compl. pp. 5-6.

under 42 U.S.C. §§ 1981, 1983, 1983, and 1988, 29 U.S.C. §§ 158, 218c, and 654, and attempts to bring claims under Title 18 of the United States Code.[3]  The current dispute before the court centers on whether Plaintiff signed Defendant's arbitration agreement.

## II.  Legal Standard

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA allows a party that has entered an arbitration agreement to request an order compelling the parties to proceed with arbitration.  9 U.S.C. § 4.  If the court is "satisfied" that an action is subject to an enforceable arbitration provision, the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.

The United States Supreme Court has repeatedly affirmed that the FAA established "a liberal federal policy favoring arbitration agreements." CompuCredit Corp. v. Greenwood, ___ U.S. ____, 132 S. Ct. 665, 669 (2012)(quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)); see also AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)(stating that the FAA

---

[3]      See id. pp. 4-5.

2

reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.")(internal quotations and citations omitted).

Courts perform a two-prong inquiry when determining whether to compel a party to arbitrate: (1) whether the parties agreed to arbitrate, and (2) whether a federal statute or policy overrides the parties' agreement to arbitrate. <u>Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.</u>, 588 F.3d 884, 886 (5th Cir. 2009).

The first prong of the inquiry has two parts: (1) "whether a valid agreement to arbitrate exists," and (2) "whether the dispute falls within that agreement." <u>Id.</u>  "Beyond this analysis, the courts generally do not delve further into the substance of the parties' disputes." <u>Id.</u> at 886-87.  Normally, both of these questions are decided by the court. <u>Kubala v. Supreme Prod. Servs., Inc.</u>, 830 F.3d 199, 201 (5th Cir. 2016).

### III. Analysis

**A.  <u>Agreement to Arbitrate</u>**

Plaintiff challenges the validity of the arbitration agreement, arguing that her signature on the agreement is a forgery.  Defendant argues that her signature on the agreement is valid and that Plaintiff should be compelled to arbitration because her claim falls within the scope of the agreement.

**1.  Valid Arbitration Agreement**

In analyzing whether there is a valid arbitration agreement

3

between the parties, courts apply state contract law, looking at general contract principles to determine validity. <u>Banc One Acceptance Corp. v. Hill</u>, 367 F.3d 426, 431 (5th Cir. 2004). There is a "strong presumption in favor of arbitration," and the burden is on the party challenging the arbitration agreement to show it is invalid. <u>Carter v. Countrywide Credit Indus., Inc.</u>, 362 F.3d 294, 297 (5th Cir. 2004).

When a party argues that it did not sign an arbitration agreement, or that the signature was forged, the Fifth Circuit has held that the court first must decide if there is a valid arbitration agreement before sending the case to arbitration. <u>Will-Drill Resources, Inc. v. Samson Resources Co.</u>, 352 F.3d 211, 216-18 (5th Cir. 2003). However, "[t]he Fifth Circuit has not provided any guidance on the exact procedures a court is to use in determining whether a signature on an arbitration agreement is a forgery." <u>Walker v. Tao Operating LLC</u>, No. 1:13-CV-916, slip op. at 7 (E.D. Tex. Aug. 14, 2014)(citing <u>Flemming v. Montgomery</u>, No. 4:09CV18-P-S, 2008 WL 2783281, at *1 (N.D. Miss. July 15, 2008)("The court has been unable to locate clear Fifth Circuit precedent regarding the mechanics as to how the court is to determine the factual issue of whether the signature on the subject arbitration agreement was forged.").

In <u>Jolley v. Welch</u>, 904 F.2d 988, 990 (5th Cir. 1990), the argument was raised that the arbitration agreement was forged, and

the matter was referred to the magistrate judge for an evidentiary hearing to decide if the arbitration agreement was forged.  <u>Id.</u> at 993.  The magistrate judge declined to compel arbitration because the defendant did not prove that an arbitration agreement between the parties existed, and the district court upheld the district court's decision.  <u>Id.</u>  The Fifth Circuit upheld the district court and did not find that the court erred in its procedure to decide the validity of the arbitration agreement.  <u>Id.</u>

In <u>Walker</u>, the plaintiff claimed the arbitration agreement was invalid because it was not his signature on the arbitration agreement.  <u>Walker</u>, slip op. at 7.  The court looked to <u>Jolley</u> for guidance on the proper procedure to follow  when deciding on whether the signature on an arbitration agreement was forged.  <u>Id.</u> <u>Walker</u>, like <u>Jolley</u>, was referred to a magistrate judge, who concluded that an evidentiary hearing was unnecessary because both parties had submitted sworn affidavits in the matter.  <u>Id.</u>  To determine if the signature was the plaintiff's, the court looked at the submitted affidavits, the plaintiff's signature on the arbitration agreement, and other documents submitted to the court, finding that "[t]he printed [signature of the plaintiff] to the Arbitration Agreement appears identical in every respect to [the plaintiff's] own printed signature on the verification page of his response to [the defendant's] motion to compel arbitration." <u>Id.</u> The court therefore found that the plaintiff had signed the

5

arbitration agreement.

In this case, Plaintiff argues that she "never signed an Arbitration Agreement" and that "Defendant forged Plaintiff's signature and created a fraudulent contract."[4]  In support of this argument, Plaintiff attached an affidavit to her response, averring that she did not sign an arbitration agreement or enroll in benefits through Defendant.[5]

Defendant contends that the arbitration agreement is valid, and, in support of this contention, submitted two affidavits from Maricela Arellano ("Arellano"), the Environmental Health and Safety Senior Manager for Defendant since 2008.[6]  Arellano averred that she witnessed Plaintiff sign the arbitration agreement and other documents related to her employment on February 7, 2013.[7]  Arellano averred that Plaintiff worked as an accounts payable clerk for Defendant from February 2, 2013, to September 4, 2015 and that Plaintiff signed these documents, including the arbitration agreement, as part of Defendant's new-hire procedure.[8]  Notably, Plaintiff does not argue that her signature was forged on the other

---

[4]     Doc. 27, Pl.'s Resp. to Def.'s Mot. to Dismiss & Compel Arbitration p. 1.

[5]     See Doc. 27-1, Ex. 1 to Pl.'s Resp. to Def.'s Mot. to Dismiss & Compel Arbitration, Aff. of Pl. p. 1.

[6]     See Doc. 31-1, Decl. to Def.'s Reply, Decl. of Arellano ¶ 2.

[7]     See Doc. 25, Decl. to Def.'s Mot. to Dismiss & Compel Arbitration, Decl. of Arellano ¶ 5; Doc. 31-1, Decl. 1 to Def.'s Reply, Decl. of Arellano ¶ 5.

[8]     See Doc. 31-1, Decl. 1 to Def.'s Reply, Decl. of Arrellano ¶ 5.

documents she signed on February 7, 2013, and Plaintiff admits that she attended new-hire orientation on February 7 and 8, 2013. Additionally, Defendant submitted an affidavit from Carolyn Russell, counsel for Defendant, who averred that Plaintiff produced to her signed copies of the very arbitration agreement she now claims is invalid at a status conference on June 15, 2016.[9]

This case, as in Jolley and Walker, has already been referred to a magistrate judge. The court finds that an evidentiary hearing is unnecessary in this case because both parties have submitted affidavits laying out their evidence related to the signature on the arbitration agreement. The court has considered these affidavits, Plaintiff's signature on the arbitration agreement, and other signed documents filed with the court to determine if the signature on the arbitration agreement is a forgery. The court finds that the signature on the arbitration agreement looks the same as Plaintiff's signature on the other new-hire documents she signed on the same day and Plaintiff's signature on documents filed with the court. Additionally, Plaintiff's signing of the arbitration agreement was personally witnessed by Arellano. The court agrees with the reasoning from Walker, where the court stated that "[a] party should not be able to avoid the enforcement of an arbitration agreement that is otherwise valid by obliquely stating

---

[9]    See Doc. 31-5, Decl. 2 to Def.'s Reply, Decl. of Carolyn Russell ¶¶ 3-5.

without any supporting proof that it is not a genuine signature." <u>Walker</u>, slip. op. at 7. Plaintiff has failed to provide any evidence to demonstrate that the signature on the arbitration agreement is not hers; instead, she merely makes the conclusory statement that the signature is a forgery in an attempt to invalidate the arbitration agreement without any supporting proof. Therefore, the court finds that it is Plaintiff's signature on the arbitration agreement, and accordingly, that the arbitration agreement between the parties is valid.

    **2. Dispute within Scope of the Arbitration Agreement**

After deciding an arbitration agreement is valid, the court must decide whether the dispute falls within the scope of the arbitration agreement. <u>Will-Drill</u>, 352 F.3d at 214. "An 'order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." <u>Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 4-2001 v. ExxonMobil Refining & Supply Co.</u>, 449 F.3d 616, 620 (5th Cir. 2006)(quoting <u>United Steelworkers of Am. v. Warrior & Gulf Nav. Co.</u>, 363 U.S. 574, 582-83 (1960)).

The party challenging the arbitration agreement can rebut this presumption by demonstrating either "(1) the existence of an express provision excluding the grievance from arbitration or (2)

the 'most forceful evidence' of a purpose to exclude the claim from arbitration."   Paper, 449 F.3d at 620 (citing Commc'ns Workers of Am. v. Southwestern Bell Tel. Co., 415 F.3d 35 (5th Cir. 1969)). When the court examines whether or not a dispute falls under the scope of the arbitration agreement, the court looks not to the "legal labels" on the plaintiff's claims, but rather to the "factual allegations underlying those claims."   Harvey v. Joyce, 199 F.3d 790, 795 (5th Cir. 2000).

Here, Plaintiff does not argue that the dispute does not fall within the scope of the arbitration agreement.   Defendant argues that Plaintiff's claims are within the scope of the arbitration agreement, as the agreement states that it includes  "claims for wrongful termination . . . claims of harassment or discrimination (including claims based on race, sex, religion, national origin, age, medical condition or disability)."[10]

The arbitration agreement states that "I recognize that disputes may arise between the Company and me during or after my employment.   I agree with the Company to submit any and all disputes to binding arbitration."[11]  The arbitration agreement also provides examples of claims that are subject to this agreement, including the list cited by Defendant above.   The only claims that

---

[10]    Doc. 25, Def.'s Mot. to Dismiss & Compel Arbitration p. 6.

[11]    Doc. 25-1, Ex. A to Def.'s Mot. to Dismiss & Compel Arbitration, Election & Arbitration Agreement p. 1 (emphasis in original).

the agreement specifically excludes are "(a) any criminal complaint or proceedings, and (b) claims before administrative agencies for unemployment benefits."[12]  Plaintiff alleges claims of employment discrimination, retaliation, and wrongful termination, violations of her constitutional rights under Title 42 of the U.S.C., and labor violations under Title 29.  These claims are not specifically excluded by the agreement and the court accordingly finds that they fall directly within the scope of the arbitration agreement.

**B.  Federal Statute or Policy**

The second prong of the inquiry asks whether the parties' agreement to arbitrate is overridden by a federal statute or policy.  As discussed above, Plaintiff's sole challenge to the arbitration agreement is that her signature on  the agreement is a forgery.  Because no party argues that a federal statute or policy overrides the agreement to arbitrate, and the court finds that none overrides it, the court finds that this second prong of the inquiry is met.

**IV.  Conclusion**

Based on the foregoing, the court **RECOMMENDS** that Defendant's motion to dismiss and compel arbitration be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto

---

[12]     <u>Id.</u> p. 2.

10

pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 13th  day of December, 2016.

U.S. MAGISTRATE JUDGE

11